UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Dawn Considine-Brechon and Steven Brechon, Individually and as parents and next friends of K.C., a Minor, | **JURY DEMAND** |
| Plaintiffs, | |
| vs. | **Case No.: 18 CV** |
| DIXON PUBLIC SCHOOLS #170; THE BOARD OF EDUCATION OF DIXON PUBLIC SCHOOLS #170; MARGO EMPEN, as an Individual and in her Official Capacity as Superintendent; LEE COUNTY SPECIAL EDUCATION ASSOCIATION; JENNIFER KIRCHNER, individually and in her Official capacity; and the ILLINOIS STATE SCHOOL BOARD OF EDUCATION, | Judge Magistrate Iain Johnston |
| Defendants. | |

## COMPLAINT

NOW COME the Plaintiffs, K.C., and Dawn Considine-Brechon and Steven Brechon, individually and as parents and next friends of K.C., by and through their attorney, Steven Whitmore, and complain as follows:

## JURISDICTION AND VENUE

1. This is action is a timely appeal of an administrative ruling mailed to the parties by Impartial Hearing Officer Mary Jo Strusz on November 24, 2017 following the special education due process hearing captioned *K.C. vs. Dixon #170,* ISBE Case No. 2016-0355, under the *Individuals with Disabilities Education Improvement Act of 2004 (IDEIA) and revised 2008* 20 U.S.C. § 1400 *et seq*.; and to assert claims for violations of law based upon K.C.'s status as a person with a disability under: the Rehabilitation Act of 1973, Section 504, 29 U.S.C. §791 *et. seq*.; A.D.A Amendments Act of 2008, §2 *et. seq*.; 42 U.S.C. §12101 et. seq.; The Civil Rights Act of 1964 § 1983 under substantive Due Process and Equal Protection Rights, 28 U.S.C. §1331 and 28 U.S.C. §1343 *et seq*.; 42 U.S.C. §1988; Concerning the Home Instruction and Instruction

in Hospitals and Institutions Act referenced in 34 CFR 300.39 and 300.115; and state law claims under Article 14 of the School Code of Illinois and its respective implementing regulations including 23 Illinois Administrative Code part 226 *et seq*; Illinois Student Records Act at 105 ILCS 10/5 and 105 ILCS 10/6; 105 ILCS 5/14-13.01(a), 23 Illinois Administrative Code §§1.520, 1.610 and 226.300 pertaining to Homebound Instruction; and Jurisdiction is founded upon a federal question of law, pursuant to 28 U.S.C. §1331 and pendant/supplemental jurisdiction of state claims under 28 U.S.C. §1367.

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, 28 U.S.C. §1342, 20 U.S.C. § 1415 (i) (2)-(3) and 34 CFR 300.500 *et seq*. At all times relevant to this action, Defendant(s) acted under color of state law.

3. Venue is properly situated in the Northern District of Illinois under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims arose there and Defendants are subject to personal jurisdiction in the Northern District of Illinois.

## THE PARTIES

4. Minor Plaintiff K.C., who was at all times relevant, is a fifteen year old resident and student enrolled in the Defendant DIXON PUBLIC SCHOOL DISTRICT #170 (hereinafter referred to as DISTRICT).

5. The Plaintiff Steven Brechon and Dawn Considine-Brechon are the adoptive parents, guardians and next friends of K.C.

6. Each and all of the Plaintiffs are citizens of the United States and residents within the DISTRICT, County of Lee, State of Illinois.

7. At all times relevant herein, Defendant DIXON SCHOOL DISTRICT #170 (hereinafter referred to as DISTRICT) was a corporate body organized under the State of Illinois for the administration of public schools located within the boundaries of Lee County, in the Northern District of Illinois. Defendant DISTRICT employs at its Dixon, Illinois location, certain school sites, which include the Reagan Middle School at 620 Division Street, Dixon, Illinois 61021 and Dixon High School and has over 40 employees. The District constitutes a "local education agency" within the meaning of IDEA. See 34 C.F.R. § 300.28.

8. DIXON BOARD OF EDUCATION is a group of citizens elected to operate and govern the DISTRICT.

9. Upon information and belief, Defendant LEE COUNTY SPECIAL EDUCATION ASSOCIATION (hereinafter referred to as LCSEA) – 2 districts Dixon and Paw Paw,

10. Defendant MARGO EMPEN, Superintendent of the DISTRICT, resides within the Northern District of Illinois and is named individually for her actions and in her official capacity as District Superintendent.

11.     Defendant JENNIFER KIRCHNER, resides within the Northern District of Illinois and is named individually for her actions and in her Official Capacity as a Tutor for K.C. employed by DISTRICT and LCSEA.

12.     Under *Tennessee v. Lane*, 541 U.S. 509, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004) and its progeny, Plaintiffs have a private right of action.

13.     Defendant ILLINOIS STATE BOARD OF EDUCATION (ISBE) is the state agency that administers public education in the state of Illinois. One of its functions is the oversight of the Due Process Hearing system in Illinois under IDEIA. ISBE has been named as a party for the purposes of filing the administrative record for the underlying proceedings in this case.

## STATEMENT OF MATERIAL FACTS

14.     The District initially found K.C. eligible beginning March 29, 2016, for "School Anxiety/School Refusal" as a child with a disability as defined by the Rehabilitation Act of 1973, Section 504, 29 U.S.C. § 791 *et. seq*. and/or A.D.A. Amendments Act of 2008.

15.     The District found K.C. ineligible as needing special education as a child with a disability as defined by I.D.E.I.A. 2004 20 U.S.C. §1412 and/or ADAAA, but had a § 504 plan providing accommodations with an eligibility under Rehabilitation Act of 1973, § 504, 29 U.S.C. § 791 *et. seq.*.

16.     K.C. is a qualified individual with a disability as defined by the A.D.A. and or Section 504 of the Rehabilitation Act because she has been diagnosed with significant mental health conditions, including but not limited to Reactive Attachment Disorder and Adjustment Disorder.

17.     K.C. is a qualified individual with a disability because the Defendant District and LCSEA regard her as having impairments that substantially limit her in daily life activities by virtue of her Section 504 plan.

18.     Due to her anxiety, trust issues and other symptoms of her disabilities and impairments of at least Reactive Attachment Disorder and Adjustment Disorder, K.C. was eligible to receive homebound services pursuant to IDEIA, Section 504 and the Illinois School Code and supplied the requisite forms to the DISTRICT.

19.     Plaintiffs returned the District-drafted Homebound Certification form to the District in compliance with District and pertinent Federal and State Homebound code and regulations listed supra.

20.     105 ILCS 5/14-13.01(a), 23 Illinois Administrative Code §§1.520, 1.610 and 226.300 define the minimum standards for students pertaining to Homebound Instruction.

21.     Homebound services provided by a District tutor began October 7, 2015.

22.     All tutors provided for K.C. were employed by the District or LCSEA.

23.     Upon information and belief it was the customary practice of the District to contract with the LCSEA to provide tutors for students receiving homebound tutoring services.

24. The District and LCSEA had a duty to supervise K.C.'s tutors and ensure their compliance with applicable state and federal homebound regulations.

25. Plaintiffs allege that the tutor was not competent to teach all subjects for K.C. and neither the quantity nor quality of tutoring for K.C. were compliant with the 105 ILCS 5/14-13.01(a), 23 Illinois Administrative Code §§1.520, 1.610 and 226.300 pertaining to Homebound Instruction or Federal guidelines under IDEIA or Section 504 for the provision of FAPE to a student with K.C.'s unique needs.

26. The District stipulated in the Administrative Due Process Hearing that from December 5, 2015 through May 20, 2016 and February 17, 2017 through May 2017, the District did not provide K.C. with a tutor.

27. The District stipulated in the Administrative Due Process Hearing that it did not provide Student with a tutoring during the summers, when school was not in session, in 2016 or 2017.

28. During all relevant periods of time including periods of tutoring and when no tutoring was provided, K.C. was provided with incorrect textbooks or no textbooks at all, incorrect grade level and redundant assignments, inadequate materials with little or no explanation of assignments, including but not limited to a properly operating computer, electronic textbooks, and other resources given to non-disabled peers.

29. During all relevant periods including periods of tutoring and no tutoring, K.C. was provided with little or no feedback on assignments or assessments, and given no explanation concerning incorrect answers.

30. When the Plaintiffs routinely checked K.C.'s grades on the electronic website she had failing or extremely low grades causing her great anxiety which was communicated to the District on numerous occasions.

31. By not accommodating K.C. in her tutoring and non-tutoring, receipt or lack of receipt of work from the District and lack of explanation of assignments, grades, and necessary materials, the District deprived K.C. of his rights to a Free and Appropriate Public Education.

32. When the Plaintiffs or their Advocate complained to the District about not receiving appropriate materials in a timely manner, the Defendants retaliated by not entering grades or entering wrong grades causing her grades to be lower on the electronic gradebook even when she turned in her work and met all her deadlines. These types of retaliatory actions caused extreme anxiety, emotional strain, and loss of self-confidence and self-esteem to the Plaintiff, K.C. and disrupted the entirety of the Plaintiffs' household.

33. The District stipulated in the Administrative Due Process Hearing that Defendant Kirchner scheduled less than the statutory minimum hours for K.C. during the period of August 2017 through October 23, 2017.

34. Even though under a "Stay-Put" order for homebound services through the pendency of the Administrative proceedings, the District never resumed homebound instruction or provided a

tutor of any kind for K.C. after October 23, 2017.

35. On January 23, 2017, Counsel for the District sent a letter to the Parent's non-attorney Advocate of its intent to unilaterally cease homebound services February 15, 2017.

36. The District did not provide this information to the Plaintiffs, nor did the letter comply with the statutory requirements of Prior Written Notice or Informed Consent under the above listed Federal, State and Administrative Codes or as listed in the Notice of Procedural Safeguards attached to the letter.

37. No Section 504 meeting was held by the District to explain its unilateral decision to the Plaintiffs.

38. Upon information and belief, no School Psychologist from the District or LCSEA was consulted before unilaterally ceasing homebound services.

39. The District unilaterally ceased tutoring services for K.C. beginning February 17, 2017 and only recommenced services in August 2017 due to an Order by the Administrative Due Process Hearing Officer. When tutoring services resumed in August 2017, a portion of the services were provided by Defendant Kirchner and a portion were provided by Defendant Kirchner's teenage daughter in violation of applicable code.

40. Defendant Kirchner admitted in her testimony in the Administrative Due Process hearing that her daughter, a student at a local two-year community college, tutored K.C. in Mathematics during the period of August-October of 2017.

41. Defendant Kirchner admitted in her testimony and time logs signed by her and made part of the underlying Administrative record that she did not provide the statutory minimum of 5 hours per week of instruction.

42. The District and LCSEA failed to supervise Defendant Kirchner and failed to provide K.C. a FAPE or the statutory minimums under Federal and Illinois code of quantity and quality for K.C. to receive a Free and Appropriate Public Education.

43. The Defendants were deliberately indifferent to K.C.'s needs, making de minimus efforts to hire a tutor for K.C., failing to advertise for a qualified tutor for K.C. outside of its own personnel or take other reasonably diligent measures to acquire a tutor for K.C. and failing to provide a tutor for K.C. for months at a time.

44. At no Section 504 team meeting or other District meeting did the District offer a plan or compensation for making up the admittedly lost tutoring time for K.C. signifying the District's deliberate indifference to K.C.'s needs.

45. At every step of the way, the Defendants relied on the Plaintiffs or their hired assistants to pick up and drop off work for K.C. placing the burden on the Plaintiffs rather than fulfilling their obligations, again demonstrating deliberate indifference over a long period of time.

46. The District failed in its affirmative duty to K.C. as it has and continues to rely on the Plaintiffs or their hired assistants to look into appropriate placements for K.C. including other

school districts and programs available to the District.

47. The District demonstrated deliberate indifference by demanding Plaintiff Dawn Considine-Brechon's attendance at meetings after the November 24, 2017 final order/decision, despite its knowledge that since at least July of 2017 D.C.S. has suffered from stage-four cancer and its associated treatments, including but not limited to chemotherapy.

48. The District at the meeting held on or about January 18, 2018 was conducted by telephone because Dawn Considine-Brechon was unable to attend due to her recent chemotherapy treatment and the advocate was at home ill.

49. Defendant Empen admitted under oath that she has attended no other 504 meeting than for K.C.

50. The District has one or two of their attorneys at every meeting regarding K.C. even when no counsel has been present for the Plaintiffs at any IEP eligibility, 504 or other educational meeting.

51. Due to the nature of K.C.'s emotional issues, disability, and effect on her attendance and education, K.C. required an educational plan under 504 or an IEP that included the input of a qualified mental health professional.

52. The Defendants should have required the attendance of one or more of its personnel trained in mental health or provided an outside expert to participate in formulating either an IEP or 504 plan for K.C.

53. Since the March 2016 initial 504 plan, District has failed to have a qualified mental health professional with first-hand knowledge of K.C. attend or provide input for any subsequent meeting before the November 2017 Administrative Hearing.

54. Even after the November 2017 hearing, no School Psychologist met with or attended any of K.C.'s educational team meetings on January 18, 2018 or March 2, 2018, which were called by the District to plan for K.C.'s return to school.

55. At the March 2, 2018 Section 504 meeting, Parent Dawn Considine-Brechon and her advocate were made aware that no social worker would be in attendance even though she was on the invitation list. The Parent and advocate objected, but the District moved forward with the meeting anyway simply noting the Parent's objection to conducting the meeting without the presence of a vital team member.

56. At both January 18, 2018 and March 2, 2018 504 meetings the District continued to state that the only way for K.C. to receive an appropriate education was to return to the Dixon School District.

57. The Plaintiff requested accommodations of attendance at any public or private school similar to Dixon Public Schools and within a reasonable driving distance considering her disabilities.

58. The District denied the Plaintiffs' requested accommodations and only offered dissimilar

6

or distant school placements in response to the Plaintiffs' repeated requests, demonstrating indifference to her unique needs and disability.

59. The District and LCSEA failed to adequately investigate whether specific services that K.C. needed in order to access her education were available as a reasonable accommodation

60. The District and LCSEA's denial of the Plaintiff's requested accommodations based on Federal and Illinois Homebound Code, A.D.A., IDEIA and Section 504 because she is being denied the opportunity to attend school as required by state law and because she is being denied the opportunity to participate in the full benefits of educational programs and services offered to non-disabled peers.

61. The Defendants came into possession of medical and mental health information not allowed by the Hearing Officer at the November 2017 hearing and provided the same to the Plaintiffs at a Section 504 meeting held on March 2, 2018.

62. At the 504 meeting of March 2, 2018, the District refused to conduct a reevaluation based on the medical and therapist records obtained by them.

63. Instead of addressing her socio-emotional issues, the Defendants demonstrated deliberate and shocking indifference to K.C.'s trauma by ignoring her cries for help, ignoring the parents', advocate and therapist's recommendations, and not providing her the social work, psychological, and other services she needed to obtain meaningful benefit from her education.

64. The Defendants by failure to protect K.C. from the discrimination she received from both the educational staff and administration has violated her civil rights as a member of a protected class particularly when it gave her no alternative but to stay home from school to avoid the discriminatory actions.

65. The Defendants through a continuing course of conduct have demonstrated deliberate indifference to the needs of the Plaintiffs and no regard for the educational, social-emotional, and mental well-being of the Plaintiffs.

### COUNT I-REVIEW OF ADMINISTRATIVE RECORD OF ADMINISTRATIVE DUE PROCESS HEARING CAPTIONED THE SPECIAL EDUCATION OF K.C. VS. DIXON #170, ISBE CASE NO. 2017-0355.

66. Plaintiffs re-allege and incorporate Paragraphs 1- 46, 49, 51-53, 57-60, and 63 as if fully set forth herein.

67. That on or about March 27, 2017, Dawn Considine-Brechon filed a request for a Due Process Hearing under I.D.E.I.A. to protect the civil rights of their daughter K.C. which was subsequently amended on April 2, 2017.

68. That a Due Process Hearing was held on November 7, 8, 9, 10, and 14, 2017 before the duly appointed Hearing Officer, Mary Jo Strusz, who mailed her opinion on November 24, 2017.

69. That the filing and hearing under the Amended Due Process Complaint fulfilled Plaintiff's requirement to exhaust her administrative remedies prior to filing this Complaint for matters through the final date of the hearing.

70. That the Hearing Officer found for the District and against the Plaintiff on the Child Find issue of eligibility as a child with a disability under the IDEA.

71. As a result of the Hearing Officer's finding, she did not reach the other issues in the Plaintiffs' request for a Due Process Administrative Hearing, which were pending and that Plaintiff now requests this Court review.

72. That the Hearing Officer misapplied the facts and the law and should have found K.C. eligible as a child with a disability pursuant to the IDEA and ruled in favor of the Plaintiffs.

73. That the decision by the Hearing Officer was limited in that her decision was based only on educational issues pursuant to I.D.E.I.A. and she had no jurisdiction to address all of the remaining issues listed in paragraph 1. *supra*.

74. Due to the limitations inherent in an IDEA due process hearing, Plaintiffs were unable to present all relevant evidence in support of their other federal and state statutory claims as listed above and should be allowed to present additional evidence *de novo* pursuant to each and every statutory claim of the violation of K.C.'S civil rights as a child of a disability.

75. The Plaintiffs continue to disagree with the District regarding K.C.'s eligibility, and allege that the information not considered at the original hearing demonstrates K.C.'s need for eligibility under the IDEIA and shall be filing a new Due Process Complaint with the District covering the period after the aforementioned Hearing Officer's decision and for which the District was in possession of new information from the medical and mental health providers.

76. Due to the competing statutory demands of exhausting administrative remedies and appealing the decision of the Hearing Officer in *K.C. vs. Dixon #170,* ISBE Case No. 2016-0355, the Plaintiffs request that this Honorable Court allow Plaintiffs to amend their complaint after the resolution of the new Due Process Complaint, stay the proceedings allowing Plaintiffs to preserve their claims during the pendency of the Administrative Due Process Hearing, or for whatever relief this Court deems appropriate.

**WHEREFORE,** Plaintiffs pray that this Court grant the following relief and a Judgment against Defendants as follows:

A. Reverse the finding and order of the Administrative Hearing Officer and find K.C. eligible for an IEP and IDEA services with the educational services and support services she needs as a child with an eligibility of either under Emotional Disturbance or O.H.I. or both;

B. Grant leave to supplement the administrative record with appropriate exhibits and hear additional testimony and evidence in this matter as the Court deems appropriate; including but not limited to the impact on K.C.'s mental health and lack of educational progress because of the District's ongoing deliberated indifference regarding its current wrong education placement of

K.C.;

C. Order that the District place K.C. in a classroom at Sterling High School where she will receive instruction based on her current diagnosis, whether under the eligibility of E.D. or O.H.I. or both; and where she will participate in general education classes, lunch, physical education, sports and other extracurricular activities with her non-disabled peers;

E. Order that the Defendants pay for social work and psychological services and therapy from independent providers to compensate for K.C.'s loss of services while not being found eligible and placement at an alternative school setting;

F. Order that the Defendants provide compensatory education services, including transportation to and from such services, through private tutoring at the Plaintiff's selection, with sufficient hours to restore K.C. to commiserate qualitative educational status, so that K.C. may make progress in the general education curriculum toward graduation from high school;

G. Order that the Defendants pay the Plaintiffs' attorney's fees and costs incurred for the administrative law hearing as well as for the filing and pursuit of this Complaint; and

H. For such other and further relief as this Court deems proper and just.

## COUNT II-VIOLATION OF A.D.A.A.A

77. Plaintiffs re-allege and Paragraphs 1-12, and 14-65 as if fully set forth herein.
78. The Equal Protection Clause of the Fourteenth Amendment commands that all persons similarly situated should be treated alike. See U.S. Constitution, Amendment XIV.
79. Title II of the A.D.A. prohibits local governmental agencies from discriminating against a qualified person with a disability by denying the qualified individual the full benefit of services, programs and or activities on the basis of the disability;
80. The District is a local governmental entity as defined by Title II of the A.D.A.
81. Defendants intentionally violated Plaintiff K.C.'s rights under A.D.A.A.A. because of their failure to provide physical access to all of her required classes and/or all classes for her to receive FAPE.
82. At all times relevant, K.C. was entitled to a free and appropriate public education just like her other non-disabled peers.
83. The Defendants intentionally discriminated against K. C. and singled her out for disparate treatment because of her disabilities.
84. Upon information and belief, actions of the District, LCSEA and its employees or contractors precipitated a situation involving one of K.C.'s siblings, causing K.C. to lose trust in the District and all of its employees.
85. That K.C.'s diagnoses, behavior and eligibility under Section 504 of the Civil Rights Act qualify her as a person with a disability under A.D.A. as amended.
86. K.C.. was denied a free and appropriate public education when the Defendants denied her

access to the school and education when it refused to find her eligible for special education, unilaterally ceased homebound services, and recommended her for an alternative educational setting apart from her peers which was inappropriate for her needs and not the Least Restrictive Environment.

87. K.C. was qualified for a specialized program under § 504 and discriminated against because of her mental health and social-emotional disabilities and was denied access to that educational program.

88. The Defendants' actions caused K.C. a loss of educational opportunities and educational benefit with her same-aged peers and caused her extreme anxiety, loss of self-esteem, and emotional distress.

89. The Defendants retaliated against the Plaintiffs by denying access to records under FERPA and ISSRA.

90. Defendant's actions are in violation of the A.D.A. Amendments Act of 2008 in that they intentionally denied the Plaintiff accessibility to a free and appropriate education required under A.D.A.

91. The Defendants intentionally and willfully and wantonly and with deliberate indifference violated K.C.'s rights under the A.D.A. as amended by retaliating against K.C. because of her disabilities and by failing to provide her access to a free and appropriate public education in the ways described herein.

**WHEREFORE,** Plaintiffs pray that this Court grant the following relief and a Judgment against Defendants as follows:

A. Award Compensatory Damages for loss of educational benefits, humiliation, and aggravation of existing conditions for the Plaintiffs.
B. Find K.C. eligible for an IEP and IDEA services with the educational services and support services she needs as a child with a disability either under E.D. or O.H.I. or both and Order the District to prepare an appropriate IEP;
C. Enjoin the Defendants from further retaliatory and discriminatory actions, including interfering with K.C.'s current educational placement in the OPTIONS program;
D. Award Punitive Damages due to the Deliberate Indifference over a period of time exhibited by the Defendants, including the District and its actors;
E. Order that the Defendants place K.C. in a classroom at Sterling High School where she will receive instruction based on her current diagnosis, whether under the eligibility of E.D. or O.H.I. or both; and where she will participate in general education classes, lunch, physical education, sports and other extracurricular activities with her non-disabled peers;
F. Order that the Defendants pay for social work and psychological services and therapy from independent providers to compensate for K.C.'s loss of services while not being

      found eligible and placement at an alternative school setting;
- G. Order that the Defendants provide compensatory education services, including transportation to and from such services, through private tutoring at the Plaintiff's selection, with sufficient hours to restore K.C. to commiserate qualitative educational status, so that K.C. may make progress in the general education curriculum toward graduation from high school;
- H. Order that the Defendants pay the Plaintiffs' attorney's fees and costs incurred for the administrative law hearing as well as for the filing and pursuit of this Complaint; and
- I. For such other and further relief as this Court deems proper and just.

## COUNT III -VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

92. Plaintiffs re-allege and incorporate Paragraphs 1-12, and 14-65 as if fully set forth herein.

93. Section 504 of the Rehabilitation Act states that "[n}o otherwise qualified person with disabilities shall, solely by reason of his or her disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. §794(a).

94. K.C. is a "qualified person with disabilities" within the meaning of Section 504, as found by the District because she has physical and/or mental impairments that substantially limits one or more major life activities including, but not limited to, learning.

95. Regulations implementing Section 504 require that a public entity administer its services, programs and activities in "the most integrated setting appropriate" to the needs of qualified individuals with disabilities. 28 C.F.R. §41.51(d).

96. That the District specifically and systemically failed over a substantial length of time to provide an appropriate educational environment both physically, emotionally and mentally for Plaintiff K.C. and failed to provide any reimbursement for K.C.'s parents payment of services required for K.C. to receive appropriate services.

97. Section 504's regulations prohibit recipients of federal financial assistance from "utiliz[ing] criteria or methods of administration...(I) [t]hat have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap [or] (ii) that have the purpose of effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to handicapped persons." 45 C.F.R. §84.4(b)(4); 28 C.F.R. §41.51(b)(e)(I).

98. Defendants, the District and LCSEA, receive, expend, or administer the expenditure of federal funds within the meaning of the Rehabilitation Act.

99. The Defendants knew that K.C. was a student with multiple disabilities, including mental health disabilities that substantially limited major life activities including access to education programs and which qualified her for special education programs and related services under the Rehabilitation Act.

100. Section 504 of the Rehabilitation Act of 1973 provides standing for a parent to sue under the Rehabilitation Act at least insofar as Dawn Considine-Brechon. and Steven Brechon are asserting and enforcing the rights of their daughter and incurring expense for her benefit.

101. The Defendants retaliated against the Plaintiffs by denying access to records under FERPA and ISSRA.

102. All of Defendant's actions listed above are retaliatory, intentional or by deliberate indifference in violation of Section 504 of the Rehabilitation Act.

**WHEREFORE,** Plaintiffs pray that this Court grant the following relief and a Judgment against Defendants as follows:

A. Award Compensatory Damages for loss of educational benefits, humiliation, and aggravation of existing conditions for the Plaintiffs.

B. Find K.C. eligible for an IEP and IDEA services with the educational services and support services she needs as a child with a disability either under E.D. or O.H.I. or both and Order the District to prepare an appropriate IEP;

C. Enjoin the Defendants from further retaliatory and discriminatory actions, including interfering with K.C.'s current educational placement in the OPTIONS program;

D. Award Punitive Damages due to the Deliberate Indifference over a period of time exhibited by the by the Defendants, including the District and its actors;

E. Order that the District place K.C. in a classroom at Sterling High School where she will receive instruction based on her current diagnosis, whether under the eligibility of E.D. or O.H.I. or both; and where she will participate in general education classes, lunch, physical education, sports and other extracurricular activities with her non-disabled peers;

F. Order that the Defendants pay for social work and psychological services and therapy from independent providers to compensate for K.C.'s loss of services while not being found eligible and placement at an alternative school setting;

G. Order that the Defendants provide compensatory education services, including transportation to and from such services, through private tutoring at the Plaintiff's selection, with sufficient hours to restore K.C. to commiserate qualitative educational status, so that K.C. may make progress in the general education curriculum toward graduation from high school;

H. Order that the Defendants pay the Plaintiffs' attorney's fees and costs incurred for the administrative law hearing as well as for the filing and pursuit of this Complaint; and

I. For such other and further relief as this Court deems proper and just.

## COUNT IV-VIOLATION OF THE CIVIL RIGHTS ACT OF 1964 42 USC §1983

103.   Plaintiffs re-allege and incorporate Paragraphs 1-12 and 14-102 as if fully set forth herein.

104.   K.C. suffered extreme distress and major anxiety due to the acts and omissions of Defendants Empen and Kirchner during the relevant time periods.

105.   Her parents also suffered anxiety and aggravation of existing conditions based on these same acts and omissions of Defendants Empen and Kirchner, as well as due to the distress of the Minor K.C.

106.   Defendants Empen and Kirchner also violated K.C.'s equal protection rights and substantive due process and liberty interest under the Fourteenth Amendment to the U.S. Constitution because of their deliberate indifference which shocks the conscience

107.   Defendant Empen's customary practice of failing to supervise the provision of tutoring services and/or compliance with relevant homebound regulations violated the Plaintiffs' constitutional right to equal protection, IDEA, 504, ADA, and Homebound statutes.

108.   Defendant Kirchner's customary practice of including travel and preparation time in calculating her tutoring time violated statutes regarding the provision of homebound services, thus violating the Plaintiffs' constitutional right to equal protection, IDEA, 504, ADA, and Homebound statutes..

109.   Defendants Empen and Kirchner further failed to provide K.C. the proper accommodations or instruction or equipment she needed in order to obtain a meaningful educational benefit in order to be able to stay in school.

110.   Defendant Empen further violated K.C.'s rights by failing to place K.C. in the least restrictive environment that would accommodate her physical and emotional needs instead of placing her in homebound classes whereby she received incomplete and/or no instruction during all relevant times.

111.   By actions or inactions the Defendants Empen deliberately and intentionally denied K.C. a free and appropriate public education in the least restrictive environment with the accommodations necessary for her to have access to the same education as her non-disabled peers.

112.   That Defendant Empen demonstrated bad faith, gross misjudgment and deliberate indifference offering only alternative placements apart from her peers instead of addressing the needs she had based on her disability and not addressing her emotional and physical need to have access to her educational classrooms and teachers for her educational instruction.

113.   Defendant Empen in bad faith, gross misjudgment and deliberate indifference, did not provide Plaintiff K.C. with any appropriate alternative schooling that addressed her disability, either physically, emotionally or psychologically that meets her educational needs.

114.   That despite many requests and the need to hire counsel, Defendant Empen in bad faith and with deliberate indifference continues to refuse to acknowledge that K.C. qualifies for special

education and related services.

115. 105 ILCS 5/14-13.01(a), 23 Illinois Administrative Code §§1.520, 1.610 and 226.300 define the minimum standards for students pertaining to Homebound Instruction.

116. Defendants Empen and Kirchner failed to adhere to Homebound Instruction regulations depriving K.C. of her constitutional rights of equal protection and due process.

117. Defendants Empen and Kirchner failed to provide K.C. with FAPE under 504 and/or IDEA which resulted in deprivation of her equal protection and due process rights.

118. Defendant Empen allowed the placement of K.C. on homebound services and inadequate credit recovery programs rather than place her in another appropriate school depriving K.C. of her right to be educated with her same-aged peers and her constitutional right to equal protection.

119. Defendant Empen's lack of good faith efforts to arrange for tutoring and/or appropriate education for long periods of time deprived K.C. of her constitutional equal protection rights.

120. Defendant Empen's allowance of a unilateral cessation of homebound services for K.C. depriving her access to her classes was an intentional and deliberately indifferent decision to deprive K.C. of her liberty and/or property right to attend school in the least restrictive environment.

121. That K.C. had a liberty or property right to participate like any other student in Dixon School District to receive an education and to physically attend a school with the support and special education she requires under IDEA and/or 504.

122. That Dawn Considine-Brechon and Steven Brechon had the right to allow their minor K.C. to participate like any other student in Dixon School District to receive an education and to physically attend a school with the support and special education she requires under IDEA and/or 504.

**WHEREFORE,** Plaintiffs pray that this Court grant the following relief and a Judgment against Defendants Kirchner and Empen, jointly and severally as follows:

A. Award Compensatory Damages for loss of educational benefits, humiliation, and aggravation of existing conditions for the Plaintiffs.
B. Find K.C. eligible for an IEP and IDEA services with the educational services and support services she needs as a child with a disability either under E.D. or O.H.I. or both and Order the District to prepare an appropriate IEP;
C. Enjoin the Defendants from further retaliatory and discriminatory actions, including interfering with K.C.'s current educational placement in the OPTIONS program;
D. Award Punitive Damages due to the Deliberate Indifference over a period of time exhibited by the District and its actors;
E. Order that the Defendants place K.C. in a classroom at Sterling High School where she will receive instruction based on her current diagnosis, whether under the eligibility of E.D. or O.H.I. or both; and where she will participate in general education classes,

14

      lunch, physical education, sports and other extracurricular activities with her non-disabled peers;

F. Order that the Defendants pay for social work and psychological services and therapy from independent providers to compensate for K.C.'s loss of services while not being found eligible and placement at an alternative school setting;

G. Order that the Defendants provide compensatory education services, including transportation to and from such services, through private tutoring at the Plaintiff's selection, with sufficient hours to restore K.C. to commiserate qualitative educational status, so that K.C. may make progress in the general education curriculum toward graduation from high school;

H. Order that the Defendants pay all of the Plaintiffs' attorney's fees and costs incurred for the administrative law hearing as well as for the filing and pursuit of this Complaint; and

I. For such other and further relief as this Court deems proper and just.

      Dawn Considine-Brechon and Steven Brechon as parents and next friends of K.C., a minor, Plaintiffs.

      BY:    /s/ Steven Whitmore
      Steven Whitmore, Attorney for Plaintiffs

Prepared by:

Steven Whitmore, ARDC# 6287665
LAW OFFICE OF STEVEN WHITMORE
515 N. Court Street
Rockford, IL 61103
Tel: (815) 315-4301
Steven.whitmore.law@gmail.com